IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON JANUSZEWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  05 C 3820 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| VILLAGE OF OAK LAWN, THOMAS MORAN, | ) | |
| EDWARD FOLLIARD, MICHAEL BOMAN, and | ) | |
| ROBERT WESSELHOFF, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sharon Januszewski filed a five-count first amended complaint against defendants Village of Oak Lawn ("Oak Lawn"); Thomas Moran, former Chief of the Oak Lawn Fire Department; Edward Folliard, current Chief of the Oak Lawn Fire Department; Michael Boman, in his individual capacity; and Robert Wesselhoff, in his individual capacity.  Count I, filed against defendant Oak Lawn, alleges gender discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq ("Title VII"). Count II, filed against defendant Oak Lawn, alleges  retaliation in violation of Title VII.  Count III, filed against all defendants, alleges a violation of plaintiff's equal protection rights under 42 U.S.C. § 1983.  Count IV, filed against all defendants, alleges retaliation in violation of plaintiff's First Amendment and equal protection rights under 42 U.S.C. § 1983.  Finally, Count V, filed against all defendants, alleges intentional infliction of emotional distress.  Defendant Oak Lawn filed a motion to dismiss Counts III, IV and V of the complaint for failure to state a claim.  Defendants Moran, Folliard, Boman and Wesselhoff move to dismiss counts IV and V for failure to state a claim.  For the reasons stated below, the court: (1) denies defendant Oak Lawn's

motion to dismiss Count III; (2) grants defendants' motions to dismiss Count IV; and (3) grants defendants' motions to dismiss Count V.

**FACTS**[1]

Plaintiff has worked as a firefighter for the Village of Oak Lawn Fire Department since June 2000. On June 16, 2003, plaintiff noticed a white substance on her bedding linens, which she kept in her storage bin. Plaintiff later learned that the substance was semen. She reported the incident to Lieutenant Scott Sobol, her commanding officer. Lt. Sobol laughed at plaintiff and later encouraged her to repeat the story to other firefighters. When she told her coworkers that she had washed her bedding, Lt. Sobol stated, "I can't believe you washed it; that could have been your Monica!" On June 28, 2003, plaintiff reported the incident to Battalion Chief Barsevick, and on July 1, 2003, she reported the incident to defendant Folliard, who was then Division Chief. Plaintiff gave her storage bin to defendant Folliard, who then gave it to the Oak Lawn Police Department.

On July 16, 2003, plaintiff took medical leave based on the psychological trauma she allegedly experienced as a result of the incident. Defendant Moran approved plaintiff's leave, and defendant Folliard told plaintiff she would not be "charged" for her leave. When plaintiff returned to work on September 23, 2003, however, she found that the fire department had

---

[1]For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

2

deducted time from her accrued sick and vacation hours, rather than treating her absence as "duty-related."[2]

On November 10, 2003, plaintiff complained to defendant Moran about her personal safety concerns and the lack of an internal investigation into the June 16th incident. Defendant Moran told plaintiff that he would not test every member of the department to determine who had ejaculated into plaintiff's bedding and would not request DNA samples from anyone beyond the three individuals who had provided samples voluntarily. Defendant Moran told plaintiff that he did not think she would find the perpetrator and stated, "You can tell your lawyer I said that." He also told plaintiff that there was nothing more that he could do for her, and that "the ball is in [your] court." After plaintiff complained about the incident to her superior officers, several of plaintiff's supervisors and co-workers began "shunning and ostracizing" her and encouraging other male firefighters to do the same.

On April 5, 2004, plaintiff complained to Division Chief Allen that she was concerned for her physical safety because of the lack of an investigation into her complaint. She also complained to Battalion Chief Barsevick about being moved to another shift. On June 6, 2004, plaintiff again complained to defendant Moran, and on March 30, 2005, plaintiff again complained to Allen.

In March 2003, defendant Boman made negative comments about female firefighters and encouraged a superior officer to give plaintiff a negative performance evaluation. Throughout the course of plaintiff's employment with the fire department, she was subjected to sexual

---

[2]Defendant Oak Lawn asserts that the hours plaintiff missed as a result of this incident were ultimately not deducted from her accrued sick or vacation time.

advances from defendant Boman. Defendant Boman was plaintiff's superior; he was a lieutenant when plaintiff was first hired and was later promoted to Captain. Defendant Boman would make comments to plaintiff such as, "What are you doing with a guy like [your boyfriend]?" and "If you ever want to leave him, let me know." Defendant Boman also frequently rubbed plaintiff's shoulders. In May 2005, defendant Boman called plaintiff at her home and told her he was "on his way over" to her house. Plaintiff told defendant Boman that she did not want him to visit, but he arrived at her house several minutes later. When he arrived, he brought up the June 2003 incident, and plaintiff complained to him about the lack of investigation by the fire department. Defendant Boman then asked plaintiff out on a date; plaintiff responded that she was not interested in dating him.

According to plaintiff, after she refused to date defendant Boman, he began shunning plaintiff at work. He refused to investigate her complaints about another superior officer making false accusations against her, and he denied her the opportunity to teach Emergency Medical Services ("EMS") training at the Fire Department Academy in 2006, which she had done for several years.

On June 27, 2005, defendant Wesselhoff, plaintiff's supervisor, falsely told his superiors that plaintiff had been "AWOL." On June 29, 2005, defendant Boman told plaintiff that he received a written allegation from defendant Wesselhoff and that he would investigate plaintiff's absence. Plaintiff complained to defendant Boman that defendant Wesselhoff was making false accusations, but the fire department did not investigate her complaint.

On July 4, 2006, defendant Wesselhoff moved the fire house's dinner time without notifying plaintiff. Plaintiff therefore could not eat with the other firefighters, even though the

4

entire team routinely eats meals together.  On that day, defendant Wesselhoff also purchased White Castle burgers and wrote on the box, "1st shifters only," when plaintiff was the only person present in the fire house who was not a "1st shifter."  Defendant Wesselhoff then said to plaintiff, "We bought those for the rest of the crew.  Not for you."  He also told her, "It's like you're not even a member of this department, anyway."

Defendant Wesselhoff told plaintiff that Battalion Chief Jensen was angry with her when he was not.  Plaintiff brought defendant Wesselhoff's statement to Jensen's attention, but Jensen did not take any action regarding plaintiff's complaint.  Plaintiff complained to several other supervisors about defendant Wesselhoff's conduct, but the department did not investigate her complaints and did not discipline defendant Wesselhoff.

On June 18, 2006, plaintiff found a sexually graphic magazine at a shared desk.  According to plaintiff, pornography was present in the fire station "every day," including: (1) in the "day room," which is the "living room" for department employees; (2) in the men's bathroom, in which female firefighters showered and which they cleaned as part of their job duties; and (3) in the bunk room, which was shared by male and female firefighters until July 2005.  Plaintiff brought the magazine to the attention of her supervisor.  The department did not investigate her complaint and did not take any action regarding the magazine.  Defendant Wesselhoff told other employees that plaintiff had fabricated her complaint regarding the magazine.

In January 2006, a member of the fire station posted an invitation to the department's holiday party on a public bulletin board.  The invitation contained pornographic images.  Defendant Folliard, in reference to the invitation, stated at a meeting, "If 'chicks with dicks' is

5

the kind of thing you're into, fine," and "[N]ot that there's anything wrong with chicks with dicks, just keep the chicks with dicks to yourself." According to plaintiff, defendant Folliard repeated this phrase five or six times.

On February 15, 2006, defendant Folliard learned that defendant Boman had propositioned her and prohibited her from teaching EMS training. When defendant Folliard asked why plaintiff was not permitted to teach, another firefighter told him that plaintiff had been excluded because she would not sleep with defendant Boman. That firefighter also told defendant Folliard that it was "common knowledge" that defendant Boman treated plaintiff differently after she refused his advances.

According to plaintiff, she has attempted to seek other employment, but defendants, including defendant Folliard, have refused to give plaintiff a positive reference. Several department supervisors, including defendants Moran, Folliard, Boman, and Wesselhoff, witnessed or acknowledged unwelcome conduct towards plaintiff and did not take any action.

Defendant Oak Lawn had no separate living quarters for female firefighters until July 2005, and it currently does not have separate living quarters for women in one of its three stations. It also did not have separate bathrooms for female firefighters in two of the three stations until June 2005. Until plaintiff's June 2003 incident, defendant Oak Lawn did not conduct sexual harassment training, and supervisors did not discuss defendant Oak Lawn's sexual harassment policy at meetings or with subordinate firefighters.

On December 9, 2003, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against defendant Oak Lawn. Plaintiff

received a Notice of Right to Sue from the EEOC dated April 8, 2005, and a Notice of Right to Sue from the United States Department of Justice Civil Rights Division dated April 11, 2005.

**DISCUSSION**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Szumny v. Am. Gen. Fin., Inc., 246 F.3d 1065, 1067 (7th Cir. 2001).

Count III

Count III of the complaint alleges that defendants violated Title VII by retaliating against her for complaining to her supervisors about sexual harassment in the workplace. Defendant Oak Lawn argues that plaintiff does not state a claim against it because under Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), a municipality may not be held liable for the illegal acts of its employees unless the plaintiff can identify a municipal "policy" or "custom" that caused the plaintiff's injury.

Under the Monell doctrine, a municipality is liable for the acts of its employees under § 1983 only when "the conduct complained of is a 'well-settled...practice...even though such a

custom has not received formal approval through the body of decision making channels.'" Bohen v. City of East Chicago, Indiana, 799 F.2d 1180, 1189 (7th Cir. 1986), quoting Wolf-Lillie v. Sonquist, 699 F.2d 864, 870 (7th Cir. 1983). Plaintiff may establish the existence of a municipal policy in one of four ways: (1) an official pronouncement of a legislative body; (2) an action of an agency with delegated authority; (3) actions by individuals with final decisionmaking authority; and (4) custom or inaction. Cornfield ex rel. Lewis v. Consolidated High School Dist. No. 230, 991 F.2d 1316, 1324 (7th Cir. 1993). Further, plaintiff must show that the municipality's action was deliberate, and she must show a direct causal link between the action and the deprivation of her rights. Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 397 (1997).

In the instant case, the complaint alleges that: "[d]efendants' actions reflect a systematic policy and practice of discrimination and retaliation"; defendant Oak Lawn and the individual defendants were "acting within the scope of their employment and pursuant to a policy, custom, and/or pattern of sex discrimination, sexual harassment, and violating individual rights"; defendant Oak Lawn "has a policy and custom of allowing and condoning sexual harassment, failing to respond to complaints, and retaliating against those who complain about unlawful conduct"; defendant Oak Lawn "has engaged in a policy, pattern, and practice of sexual harassment of women and discrimination based on gender"; and defendant Oak Lawn "has engaged in a policy, pattern, and practice of retaliating and condoning retaliation against employees who complain of sexual harassment and discrimination." These allegations are supported by the facts asserted in the complaint, which outline the harassment alleged by

8

plaintiff and the alleged failure of multiple supervisors to investigate plaintiff's many complaints.

Despite defendant Oak Lawn's protestations, plaintiff's claims are not "boilerplate."[3] Instead, they provide defendant Oak Lawn with sufficient notice of the claims alleged against it and the underlying facts to support those claims. Defendant Oak Lawn's motion to dismiss Count III is therefore denied.

Count IV

Count IV of the complaint alleges that all defendants violated plaintiff's First Amendment and equal protection rights by retaliating against her for her complaints of sexual harassment. Defendants argue that plaintiff fails to state a claim under Count IV because her speech is not entitled to protection under the First Amendment. Defendant Oak Lawn also argues that plaintiff fails to state a claim against it because a municipality may not be held liable for the illegal acts of its employees unless the plaintiff can identify a municipal "policy" or "custom" that caused the plaintiff's injury under Monell. The individual defendants also argue that the court should dismiss Count IV because they are entitled to qualified immunity.

To state a claim under § 1983 for retaliation based on free speech, plaintiff must show that: (1) her speech was based on a matter of public concern; (2) her speech was a motivating factor in defendant's retaliatory action; and (3) defendants' interests did not outweigh plaintiff's

---

[3]In support of its argument that plaintiff's assertions are "boilerplate," defendant Oak Lawn lists several cases in which plaintiff's counsel uses identical language in asserting Monell claims. In each of the four instances referenced by defendant Oak Lawn, plaintiff's Monell claim survived a motion to dismiss or was not challenged by defendant until a motion for summary judgment.

rights. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). To determine whether plaintiff's speech was based on a matter of public concern, the court must examine "the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983). Speech not otherwise of public concern "does not attain that status because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." Id. at 148 n.8. Instead, the court must analyze whether plaintiff's speech relates to a matter of public interest or that of "wholly personal grievances." Dishnow v. School Dist. of Rib Lake, 77 F.3d 194, 197 (7th Cir. 1996).

In Gray v. Lacke, 885 F.2d 399, 411-14 (7th Cir. 1989), the Seventh Circuit held that a woman who complained to her supervisors about sexual harassment solely to have her personal situation resolved did not speak on a matter of public concern, but instead only on a personal matter. See also Barth v. Village of Mokena, 2006 WL 862673, *28 n.25 (N.D. Ill. 2006) ("speech about harassment and discrimination does not rise to the level of public concern if 'the expression addresses only the personal effect upon the employee'"), quoting Button v. Kibby-Brown, 146 F.3d 526, 529-30 (7th Cir. 1998). Similarly, in the instant case, plaintiff complained to her supervisors only regarding sexual harassment that she herself experienced to reach a resolution of her own problem. Plaintiff's speech is therefore personal, rather than on a matter of public concern, and is insufficient to state a claim under § 1983. Consequently, the court grants defendants' motion to dismiss Count IV.[4]

---

[4]Because the court grants defendants' motion to dismiss Count IV on the grounds discussed above, it need not consider defendants' arguments based on the Monell doctrine or
(continued...)

Count V

Count V alleges intentional infliction of emotional distress. Defendants argue that this claim is barred by the Illinois Human Rights Act, 775 ILCS § 5/1-202 et seq. ("IHRA"), which states that sexual harassment by "any employer, employee [or] agent of any employer" is a civil rights violation. 775 ILCS § 5/2-102(D). The IHRA "preempts all state law claims seeking redress for a 'civil rights violation' within the meaning of that statute." Krocka v. City of Chicago, 203 F.3d 507, 516 (7th Cir. 2000), quoting Geise v. Phoenix Co. of Chicago, Inc., 159 Ill.2d 507, 516 (Ill. 1994). Further, the IHRA preempts all common law tort claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." Dardai v. Cook County, 1999 WL 46906, *9 (N.D. Ill. 1999) (citation omitted). The Seventh Circuit has repeatedly held that common law claims for intentional infliction for emotional distress are preempted by the IHRA when plaintiff's allegations are based solely on incidents of sexual harassment. See, e.g., Jansen v. Packaging Corp. of America, 123 F.3d 490, 493 (7th Cir. 1997) (a claim for intentional infliction of emotional distress is preempted by the IHRA because it "depend[ed] on allegations of sexual harassment"); Smith v. Chicago Sch. Reform Bd. of Trustees, 165 F.3d 1142, 1151 (7th Cir. 1999) (plaintiff's claim for intentional infliction of emotional distress is preempted when "the core of [plaintiff's] theory" was that plaintiff was a victim of sexual harassment).

---

[4](...continued)
qualified immunity.

In the instant case, plaintiff argues that the facts underlying her claim of intentional infliction of emotional distress are not based solely on her claims of sexual harassment. Plaintiff's own response brief, however, indicates the exact opposite. Plaintiff states that her claim of intentional infliction of emotional distress is based on: being subjected to pornographic material; finding that a co-worker ejaculated on her personal belongings and the failure of the fire department and plaintiff's supervisors to respond to her complaints; charging plaintiff with sick time and vacation time for leave related to emotional distress; being propositioned by a superior officer and retaliated against for rejecting his advances; being falsely accused of misconduct; being threatened with and subjected to disciplinary action; and being shunned by co-workers. Each of these allegations is included in plaintiff's claims for sexual harassment and retaliation under Title VII; plaintiff has not alleged any conduct in her claim for intentional infliction of emotional distress that is not linked to her claims for sexual harassment and retaliation. Plaintiff's claim is therefore preempted by the IHRA, and the court grants defendants' motion to dismiss Count V.

## CONCLUSION

For the reasons stated above, the court denies the motion to dismiss Count III and grants the motions to dismiss Counts IV and V. Defendant Oak Lawn is ordered to answer Counts I, II and III of the complaint by March 21, 2007, and defendants Moran, Folliard, Bowman, and Wesselhoff are ordered to answer Count III of the complaint by March 21, 2007. This matter is set for a report on status March 28, 2007, at 9:00 a.m.

*Robert W. Gettleman*

**ENTER: March 5, 2007**

_____
**Robert W. Gettleman**
**United States District Judge**